UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH A. BIASELLA,

        Plaintiff,

vs.                    Case No.  2:04-cv-320-FtM-29DNF

CITY OF NAPLES, FLORIDA; JOE HERMS;
PENNY TAYLOR; FRED TARRANT,

        Defendants.

_____

## OPINION AND ORDER

      This matter comes before the Court on Defendants' Motion to Dismiss (Doc. #32) the Amended Complaint and their Memorandum of Law in Support of Motion to Dismiss (Doc. #33).  Plaintiff filed a Revised Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. #37).  The Court had dismissed the original Complaint, but allowed plaintiff leave to file an Amended Complaint as to the City of Naples and the individual defendants (Doc. #26).

      Also before the Court is defendants' Request to Take Judicial Notice of the City of Naples Charter (Doc. #31).  Plaintiff has filed no objection to defendants' Request, and the time to respond has expired.

### I.

      In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Christopher v. Harbury, 536

U.S. 403, 406 (2002).  A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle them to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) (footnote omitted); <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc).  To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests.  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002).  While the federal pleading burden is not great, it nonetheless requires fair notice of the claim and the grounds upon which the claim rests.  <u>Dura Pharms., Inc. v. Broudo</u>, 125 S.Ct. 1627, 1634 (2005).  The Eleventh Circuit imposes "heightened pleading requirements" for section 1983 cases which involve individuals entitled to assert qualified immunity.  <u>Swann v. Southern Health Partners, Inc.</u>, 388 F.3d 834 (11th Cir. 2004), citing <u>Leatherman v. Tarrant County</u>, 507 U.S. 163 (1993).  The heightened pleading standard is not otherwise applicable.  Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989); <u>Brown v. Crawford County, Ga.</u>, 960 F.2d 1002, 1009-10 (11th Cir. 1992).  The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint.  <u>Marsh</u>, 268 F.3d at 1036 n.16.

## II.

The Amended Complaint (Doc. #29) sets forth the following:  On or about June 12, 1998, plaintiff Joseph Biasella (plaintiff or Biasella) entered into a $200,000 contract with defendant City of Naples (the City) to respond to and clean up damages caused by a fire at the Port Royal Boat House.  Plaintiff completed the contract, and billed the City $166,000.

During the next four years, the individual defendants (Herms, Taylor, and Tarrant)[1] destroyed plaintiff's reputation and his salvage business by publicly espousing baseless allegations and maliciously instigating investigations of plaintiff to further their political careers.  Specifically, the individual defendants took the following actions: (1) they publicly alleged that plaintiff committed fraud and theft on the City; (2) they instituted eleven investigations of plaintiff; (3) they repeatedly told the press that plaintiff had committed crimes and other deceitful acts, such as fraud and insurance fraud; (4) they created a City policy to cease to contract with plaintiff for City contracts; (5) they blackballed plaintiff from parking his boat at the City dock; and (6) they made defamatory statements about plaintiff to City employees.  The allegations were known by the

---

[1]The individual defendants are (1) Joe Herms, the City's Vice-Mayor; (2) Penny Taylor, a City Councilwoman; and (3) Fred Tarrant, a City Councilman.  All of the individual defendants held their respective positions during the time period relevant to the allegations in the Amended Complaint.

individual defendants to be false, and investigations by several governmental agencies failed to uncover any wrongdoing regarding billing by plaintiff.

The one-count Amended Complaint alleges, pursuant to 42 U.S.C. § 1983, a violation of plaintiff's Fourteenth Amendment procedural and substantive due process rights.  Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

### III.

Title 42 U.S.C. § 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under 42 U.S.C. § 1983, plaintiffs must allege and ultimately prove that (1) defendant deprived them of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir.), reh'g and reh'g en banc denied, 277 F.3d 1381 (11th Cir. 2001).  In addition, plaintiffs must allege and establish an affirmative causal connection between the defendants' conduct and the constitutional deprivation.  Troupe v. Sarasota County, Florida, ____ F.3d ____, Nos. 04-10550, 04-10563, 2005 WL 1813304, at *3 (11th Cir. Aug. 3, 2005); Marsh, 268 F.3d at 1059.

**A.**

Defendants first argue that the Amended Complaint must be dismissed because it fails to allege the violation of a clearly established federal constitutional right.  Defendants are certainly correct that section 1983 is not itself a source of substantive rights, but merely provides a procedural mechanism for vindicating federal rights created elsewhere.  "One cannot go into court and claim a 'violation of § 1983' – § 1983 by itself does not protect anyone against anything."  Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002), quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979).  See also Skinner v. City of Miami, Fla., 62 F.3d 344, 347 (11th Cir. 1995).

The Amended Complaint, however, specifically alleges that the conduct violated plaintiff's Fourteenth Amendment rights to procedural due process and substantive due process.  The Fourteenth Amendment to the United States Constitution explicitly guarantees to each citizen that no State shall "deprive any person of life, liberty, or property, without due process of law...."  U.S. Const., amend. XIV, § 1.  The Supreme Court has determined that the Due Process Clause provides both procedural and substantive rights.  Zinermon v. Burch, 494 U.S. 113, 125 (1990); Doe v. Moore, 410 F.3d 1337, 1342 (11th Cir. 2005).  Thus, the Amended Complaint does identify specific, clearly established constitutional rights, and defendants' assertion to the contrary is without merit.

-5-

Although the Amended Complaint sufficiently identifies procedural and substantive due process as the constitutional rights at issue, that alone is not sufficient to state a claim upon which relief may be granted.   The remainder of defendants' argument asserts that for various other reasons the Amended Complaint must be dismissed.   The Court will address each argument, although not necessarily in the order presented by defendants.

**B.**

Defendant Tarrant asserts that the Amended Complaint must be dismissed because there are insufficient factual allegations as to him.   Whether judged under the usual pleading standard or the heightened pleading standard, the Court agrees.   The specific factual allegations concerning defendant Tarrant's conduct are almost non-existent.   Tarrant is identified (Doc. #29, ¶ 7), but the only specific conduct alleged is that Tarrant and the other two individual defendants initiated allegations reported in the *Naples Daily News* in the following sentence:   "Biasella's name has been in the news in the past several months, ever since Mayor Bonnie MacKenzie was accused of having a conflict of interest because of financial ties to Biasella's company."   (Id., ¶ 15c).   Tarrant's specifically alleged conduct does not state a claim under either procedural or substantive due process.   Therefore, the Amended Complaint will be dismissed as to Tarrant.

-6-

## C.

A component of plaintiff's claimed violation of his procedural and substantive due process rights is the assertion that defendants violated plaintiff's liberty interest in being free from searches and seizures without probable cause or constitutional justification. (Id., ¶¶ 26a, 27a). As a legal matter, it is clear that any search and seizure claim must be brought under the Fourth Amendment, not the Fourteenth Amendment due process clause. Albright v. Oliver, 510 U.S. 266 (1994); Carr v. Tatangelo, 338 F.3d 1259, 1271 (11th Cir. 2003). As a factual matter, the Amended Complaint fails to set forth any facts which would support a claimed violation of plaintiff's right against unreasonable search and seizure. While plaintiff's Revised Memorandum states that his premises and computers were searched (Doc. #37, p. 11), there are no such allegations in the Amended Complaint. Additionally, not even the Revised Memorandum addresses how a person who initiates an investigation, as defendants are alleged to have done, would be liable for unlawful searches or seizures by others during the subsequent investigation. Therefore, the Amended Complaint will be dismissed to the extent it relies upon a violation of plaintiff's right against unreasonable search and seizure.

## D.

Another component of plaintiff's due process claims is the asserted right to be free from malicious investigations.

Defendants respond that there is no general constitutional right to be free from investigation, and therefore no possible due process violation has been alleged in the Amended Complaint.

The substantive due process component of the Due Process Clause protects only those rights that are "fundamental," that is, rights that are so implicit in the concept of ordered liberty that neither liberty nor justice would exist if they were sacrificed. Moore, 410 F.3d at 1342-43; McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)(en banc). "Fundamental rights are those rights created by the Constitution," Greenbriar Village, L.L.C. v. Mountain Brook City, 345 F.3d 1258, 1263 (11th Cir. 2003), and have not generally been extended to tort law. Skinner, 62 F.3d at 347. The Eleventh Circuit has noted the Supreme Court's caution against expanding the concept of substantive due process, and has held that it "must not be used through § 1983 as a 'font of tort law' to convert state tort claims into federal causes of action." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003).

The Court must analyze a substantive due process claim by first crafting a careful description of the asserted right and then determining whether that asserted right is one of the fundamental rights and liberties within the scope of substantive due process. Moore, 410 F.3d at 1343. "Conduct by a governmental actor that would amount to an intentional tort under state law would only rise to the level of a substantive due process violation if it 'shocks

-8-

the conscience' or interferes with rights 'implicit in the concept of ordered liberty' – in other words, only if it affects individual rights guaranteed explicitly or implicitly by the Constitution itself."   <u>Dacosta v. Nwachukwa</u>, 304 F.3d 1045, 1048 (11th Cir. 2002)(citation omitted).

The Amended Complaint asserts that defendants instituted "at least eleven (11) investigations of plaintiff (including but not limited to the Florida Insurance Commission, the City Finance Department, the Naples Police Department, and the Federal Bureau of Investigation) . . ." (Doc. #29, ¶ 11) knowing that plaintiff had not committed any crime, act of deceit, or other act of moral turpitude or bad faith, and "maliciously instigated investigations solely to further their own political careers" (<u>id</u>. at ¶ 12).  As examples of misconduct, plaintiff alleges that on or about August 13, 2001, defendant Herms attempted to hire an auditor to determine the reasonableness of plaintiff's charges to the City for the 1998 cleanup based solely upon information contained in a newspaper article.  (<u>Id</u>. at ¶ 15(d)).  The Amended Complaint further alleges that "the initiation of investigations against plaintiff were made for the purpose of disrupting or destroying plaintiff's business, defaming Mayor Bonnie McKenzie, and promoting the Defendants' own political career(s)."  (<u>Id</u>. at ¶ 24).

The general right asserted in the Amended Complaint is the "right" to be free from maliciously instigated and baseless investigations.   More specifically, as it relates to these

defendants, the Amended Complaint asserts a right not to have others instigate official investigations for malicious, self-serving purposes and without some level of evidence.

The Court concludes that this is not one of those fundamental rights and liberties which is implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed. There is no particular level of evidence constitutionally required before a person may seek to instigate an investigation by authorities. While there is a cause of action as to the investigators if they conduct a constitutionally deficient investigation and an arrest results from the investigation, Kingsland v. City of Miami, 382 F.3d 1220, 1228-31 (11th Cir. 2004), the Amended Complaint asserts that all investigations ended favorably towards plaintiff and he was never arrested or charged with anything. While defendants may have committed a state tort, the alleged conduct does not amount to a constitutional violation within the Due Process Clause.

**E.**

Defendants argue that the defamation-like assertions in the Amended Complaint do not state a constitutional claim because plaintiff has not alleged any tangible deprivation of a constitutionally protected property or liberty interest. Plaintiff responds that he has suffered loss to both business and personal reputation, and that the alleged injury to business reputation satisfies the requirement of a tangible deprivation of a

constitutionally protected property interest.   Plaintiff also asserts that he was deprived of his ability to contract with the City.

Plaintiff alleges that defendants caused damage to his personal reputation and business by numerous false statements. Such conduct may give rise to an actionable procedural due process claim for deprivation of liberty, sometimes referred to as a "stigma-plus" suit. Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000).   In Paul v. Davis, the Supreme Court held that defamation by the government, standing alone and apart from any governmental action, does not constitute a deprivation of liberty or property under the Fourteenth Amendment.   424 U.S. 693, 694 (1976).  See also Cannon v. City of West Palm Beach, 250 F.3d 1299, 1302 (11th Cir. 2001).  "A plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation 'plus' the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause." Cannon, 250 F.3d at 1302, citing Paul, 424 U.S. at 701-02; see also Siegert v. Gilley, 500 U.S. 226, 233 (1991)("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."); Cypress Ins. Co. v. Clark, 144 F.3d 1435, 1436 (11th Cir. 1998)("In defamation cases brought under section 1983, allegations of injury to reputation alone do not support a section 1983 claim for violation of due process, and therefore must be

-11-

accompanied by a constitutionally recognized injury."); Moore v. Otero, 557 F.2d 435, 437 (5th Cir. 1977)("To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law."). Therefore, to the extent the Amended Complaint relies upon damage to plaintiff's personal or business reputation, it fails to satisfy the "stigma-plus" requirements of a due process claim against any defendant.

Plaintiff also asserts that his right to contract was violated when defendants instructed the City Dock Master/Harbormaster not to enter into contracts with plaintiff's business, and that this, coupled with the defamatory statements, satisfies the requirements of a due process claim. "It has long been recognized that the government, like private individuals and businesses, has the power to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." Ray Baillie Trash Hauling, Inc. v. Kleppe, 477 F.2d 696, 709 (5th Cir. 1973)(internal quotations omitted). In exercising this power, however, the City remains subject to the constitutional requirements. Id. "While [the Fifth Circuit] has not attempted to define with exactness the liberty ... guaranteed (by the Fourteenth Amendment), the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right

of the individual to contract. . . ." <u>Drummond v. Fulton County</u> <u>Dep't of Family and Children's Servs.</u>, 547 F.2d 835, 852 (5th Cir. 1977).[2]  For example, a government entity may not terminate or refuse to renew the contract of even an independent contractor in violation of his First Amendment rights.  <u>Board of County Comm'rs</u> <u>v. Umbehr</u>, 518 U.S. 668 (1996).

Here, the Amended Complaint alleges that, in prohibiting the City Dock Master/Harbormaster from contracting with plaintiff, defendants implemented a policy of blackballing in which plaintiff was deprived of his right to contract without due process.  While defendants contend that plaintiff has no constitutionally protected right under any set of facts, the Court disagrees.  Given the pre-existing business relationship between plaintiff and the City, the Court cannot say at this stage of the proceedings that there are no set of facts which could establish a violation of plaintiff's due process rights in connection with his right to contract with the City.  Therefore, the motion to dismiss this aspect of the Amended Complaint must be denied.

**F.**

The City argues that even if plaintiff has properly pled the deprivation of a constitutional right, he has not properly pled that any policy or custom of the City of Naples caused the

---

[2]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

deprivation of that right.  The City concedes that the Amended Complaint alleges that the misconduct was pursuant to a City policy, but argues that the three individual defendants are not the policymakers for the City and only the seven-member Naples City Council is the policymaker.

Under § 1983, a governmental entity may not be held liable under a theory of *respondeat superior*, but instead may only be held liable when its "official policy" causes a constitutional violation.  Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978).  Plaintiffs can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity. Grech v. Clayton County, Ga, 335 F.3d 1326, 1320-30 (11th Cir. 2003).  Plaintiff must identify the municipal policy or custom which caused his injury so that liability will not be based upon an isolated incident, McDowell v. Brown, 392 F.3d 1289, 1290 (11th Cir. 2004), and the policy or custom must be the moving force of the constitutional violation.  Grech, 335 F.3d at 1330; see also Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

While the record supports the City's position that the Naples City Council is the policymaker for the City, this does not preclude the § 1983 claim against the City.  While the individual defendants could not have enacted an "official policy," § 1983

-14-

claims are not limited to such official policies.  <u>Grech</u>, 335 F.3d at 1330 n.6.  The Amended Complaint alleges that the misconduct was committed "under City policy and custom" (Doc. #29, ¶ 11); that the individual defendants "had authority in the City of Naples including the ability to initiate investigations, to make public announcements on behalf of the City, . . ." (<u>Id</u>., ¶ 18); that "the actions of the Defendants became the policy and/or custom of the Defendant-City of Naples, which caused the Plaintiff's injuries" (<u>Id</u>.); that "[t]he government policy and custom which was practiced by these Defendants was for the City Council-persons to make baseless allegations, institute fraud investigations against political rivals, and to submit false press releases with complete disregard for the truth of knowledge of the false nature of the release for the sole purpose of injuring the Plaintiff and other political opponents."  (<u>Id</u>., ¶ 21); and that "[t]he conduct of the Defendants as alleged herein was in execution of a governmental policy or custom in that their practice became so widespread, permanent and well settled - in fact continued over several months time - as to constitute a custom and usage with the force of law." (<u>Id</u>., ¶ 22).  Viewed in the light most favorable to plaintiff, the Amended Complaint adequately alleges a policy or custom by the City.

Additionally, the City alleges that plaintiff has not sufficiently alleged that the policy was the "moving force" for the violation of his constitutional right.  The Amended Complaint

alleges that "the actions of the Defendants became the policy and/or custom of the Defendant-City of Naples, which caused the Plaintiff's injuries" (Id., ¶ 18) and that "[t]hese stated policies and customs of the Defendants are the basis of the constitutional violations alleged herein." (Id., ¶ 23).  It further alleges that the conduct of defendants rendered plaintiff unable to survive the conduct, including the refusal of the City to contract with plaintiff.  (Id., ¶ 25).  Viewed in the light most favorable to plaintiff, the Amended Complaint adequately alleges a policy or custom by the City was the moving force of his constitutional violations.

The City's motion to dismiss for these alleged pleading defects will therefore be denied.

### G.

The three individual defendants assert that the Amended Complaint must be dismissed because they are protected by absolute legislative immunity or at least by qualified immunity.

### (1)  Absolute Immunity

The individual defendants contend that absolute legislative immunity protects their actions to the extent they were "acting in their official capacities as legislators and carrying on the duties of legislators . . ." (Doc. #33, p. 14).  They further assert that their statements made "in connection with their performance as members of the City Council" are absolutely privileged.  (Id., p.

15).   Defendants   misconceive   the   scope   of   their   legislative
immunity and privilege.

It is certainly well settled that "[l]ocal legislators are
entitled to absolute immunity from § 1983 liability for their
legislative activities." Bogan v. Scott-Harris, 523 U.S. 44, 54
(1998).   It is also clear, however, that absolute legislative
immunity does not attach to all actions by a local legislator.
"Absolute legislative immunity attaches to all actions taken 'in
the sphere of legitimate legislative activity.'" Id., quoting
Tenney v. Brandhove, 341 U.S. 367, 376 (1951).   "Whether an act is
legislative turns on the nature of the act, rather than on the
motive or intent of the official performing it." Bogan, 523 U.S.
at 54.   "In determining which actions of local legislators are
protected by the doctrine of absolute legislative immunity, this
Court has drawn the line between legislative actions and
administrative actions: Absolute legislative immunity extends only
to actions taken within the sphere of legitimate legislative
activity." Corn v. City of Lauderdale Lakes, 997 F.2d 1369, 1392
(11th Cir. 1993)(internal quotation marks omitted), citing Brown,
960 F.2d at 1011.   Employment decisions are typically considered
administrative actions, not legislative activity protected by
absolute immunity. Smith v. Lomax, 45 F.3d 402, 405-06 (11th Cir.
1995); Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1064-65
(11th Cir. 1992).   The only aspect of the Amended Complaint which
the Court has found to state a claim relates to plaintiff's

-17-

employment with the City.  This claim is not within the scope of legislative immunity, and therefore the Amended Complaint need not be dismissed on this ground.

Viewing the facts in the light most favorable to plaintiff, the Court concludes the individual defendants have not shown that the public statements were made within the sphere of legitimate legislative activity within the meaning of the legislative immunity principles.  The statements in the Amended Complaint are alleged to have been made in the course of an on-going investigation of plaintiff's salvage activities, but not during voting, debate, or commentary on legislation.  Indeed, the activity of which plaintiff complains falls into an administrative capacity, i.e., overseeing and commenting on the mayor's use of the funds from the City's treasury.  Accordingly, the Court concludes that the individual defendants are not entitled to dismissal based upon absolute legislative immunity.

Defendants do have an evidentiary privilege arising from the legislative immunity, and some of the allegations in the Amended Complaint may well be within that privilege.  E.g. Doc. #29, ¶¶ 13, 14, 15(I).  Even disregarding the content of these paragraphs, the Amended Complaint is sufficient to survive a motion to dismiss.

**(2)  Qualified Immunity**

Alternatively, the individual defendants argue that they are protected by qualified immunity.  The individual defendants contend plaintiff failed to identify a violation of a clearly established

constitutional right.  Additionally, the individual defendants assert that they were acting within the scope of their discretionary authority and there was no clearly established law which proscribed members of the City Council from commenting on investigations or providing their opinions on opposing political candidates and their associates during the campaign period. According to the individual defendants, City Council members are authorized to make public statements as part of their discretionary duties.  Plaintiff responds that the qualified immunity defense is unavailable to the individual defendants because the Amended Complaint sufficiently sets forth a due process claim including allegations of a constitutionally protected right and the individual defendants' violation thereof.

To be eligible for qualified immunity, defendants must first prove they were acting within the scope of their discretionary authority when the allegedly wrongful act occurred.  Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005); Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003).  If this is shown, the burden shifts to plaintiff to show that qualified immunity is not appropriate.  Mercado, 407 F.3d at 1156; Wood, 323 F.3d at 877.

The Court conducts a two-part inquiry to determine whether qualified immunity is appropriate.  Harris v. Coweta County, Ga., 406 F.3d 1307, 1313-14 (11th Cir. 2005); Garrett v. Athens-Clarke County, Ga., 378 F.3d 1274, 1278-79 (11th Cir. 2004); Dahl v. Holley, 312 F.3d 1228, 1233 (11th Cir. 2003).  First, the court

determines whether the, viewed in a light most favorable to plaintiffs, show that defendants' conduct violated a constitutional right. <u>Brosseau v. Haugen</u>, 125 S.Ct. 596, 598 (2004); <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002); <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The second inquiry is whether, at the time of the violation, the constitutional right was clearly established in light of the specific context of the case, not simply as a broad proposition. <u>Brosseau</u>, 125 S.Ct. at 599-600; <u>Dahl</u>, 312 F.3d at 1233.

The threshold question is whether, taken in the light most favorable to plaintiff, the facts alleged show a deprivation of an actual constitutional right. <u>Marsh</u>, 268 F.3d at 1028. If a violation could be made out on a favorable view of the facts alleged, the court next determines whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. <u>Id</u>. at 1022. "Defendants are entitled to qualified immunity in a Rule 12(b)(6) motion to dismiss only if the complaint fails to allege facts that would show a violation of a clearly established constitutional right." <u>Kyle K. v. Chapman</u>, 208 F.3d 940, 942 (11th Cir. 2000).

At this 12(b)(6) stage, the Court concludes that the individual defendants are not entitled to the qualified immunity defense. It is recognized that the right to contract is a fundamental right under the United States Constitution. <u>Board of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 572 (1972). To

prevail against a government entity on a claim of an unconstitutional violation of the freedom to contract protected by the Due Process clause, the plaintiff must demonstrate that the entity acted arbitrarily and capriciously. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 392 (1937). According to the Amended Complaint, the individual defendants, who include the Vice-Mayor and members of the City Council, authorized the subject policy of blackballing plaintiff from public contracts with the City Dock Master/Harbormaster. Neither the City nor the individual defendants showed that such policy was rationally related to a legitimate City interest. Moreover, plaintiff alleged that "[d]efendants were without justification to engage in the destructive policy and misleading conduct regarding the Plaintiff, other than to further their career." (Doc. #29, ¶ 20). It is clear that placing an arbitrary and unreasonable restriction on an individual's right to contract is a violation of that constitutionally protected right. Parrish, 300 U.S. at 392. In implementing such policy, the individual defendants violated clearly established law prohibiting limitations on plaintiff's right to contract in the absence of a rational basis. Thus, the qualified immunity defense is unavailable to the individual defendants.

## VI.

Federal Rule of Evidence 201 governs judicial notice of adjudicative facts, and states as follows:

**(a) Scope of rule.**  This rule governs only judicial notice of adjudicative facts.
**(b) Kinds of facts.**  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
**(c) When discretionary.**  A court may take judicial notice, whether requested or not.
**(d) When mandatory.**  A court shall take judicial notice if requested by a party and supplied with the necessary information.
**(e) Opportunity to be heard.**  A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed.  In the absence of prior notification, the request may be made after judicial notice has been taken.
**(f) Time of taking notice.**  Judicial notice may be taken at any stage of the proceeding.

Defendants request that the Court take judicial notice of the Charter of the City of Naples pursuant to Fed. R. Evid. 201, and plaintiff has made no objections.  The Court notes that the Charter is capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.  Thus, the Court will take judicial notice of the Charter of the City of Naples.

Accordingly, it is now

**ORDERED:**

1.  Defendants' Motion to Dismiss (Doc. #32) is **GRANTED IN PART AND DENIED IN PART.**  The Amended Complaint is dismissed without prejudice as to defendant Fred Tarrant; the portions of the Amended Complaint which rely upon allegations of unlawful search and seizure, a right to be free from maliciously instigated and

baseless investigations, and defamatory statements unrelated to plaintiff's contracts with the City of Naples are dismissed with prejudice; and is otherwise **DENIED.**

2.   The remaining defendants shall file their answer within **TEN (10) DAYS** from the date of this Order.

3.   Defendant's Request for Judicial Notice (Doc. #31) is **GRANTED**.  Defendants are instructed to file a copy of the Charter of the City of Naples within **TEN (10) DAYS** from the date of this Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __11th__ day of August, 2005.


_____
JOHN E. STEELE
United States District Judge

-23-